UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LON B. ALTMAN,

                                                  Plaintiff,

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                                                  Defendant.[1]

**REPORT AND RECOMMENDATION**

15-CV-00967-MAT-JJM

_____

This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before me are the parties' cross-motions for judgment on the pleadings [11, 18].[2] Having reviewed the parties' submissions [11, 18, 19], I recommend that this case be remanded to the Acting Commissioner for further proceedings.

**BACKGROUND**

Plaintiff filed an application for DIB, alleging a disability resulting from a "back issue", with an onset date of October 2, 2011. Administrative record [7], pp. 125, 137. Plaintiff's application was denied (id., pp. 78-81), and an administrative hearing was held on June 12, 2014 before Administrative Law Judge Grenville W. Harrop, Jr. Id., pp. 31-62. Plaintiff (who was 55 years old at the time) and a vocational expert testified. Id. Plaintiff was

---

[1] Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. ("Rule") 25(d). See Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2] Bracketed references are to the CM/ECF docket entries.

represented at the hearing by counsel. Id. ALJ Harrop determined that plaintiff was not disabled (id., pp. 15-25), and the Appeals Council denied plaintiff's request for review after plaintiff submitted additional evidence, which the Appeals Council concluded did not affect the decision to deny DIB, since the records post-dated his last insured date. Id., pp. 1-3. Thereafter, plaintiff commenced this action.

At the administrative hearing plaintiff testified that since he ceased working in February 2012, after having worked a variety of jobs, including as a driver, vehicle salesman, and public relations assistant. Id., pp. 35-39. His "back went out in 2011" and it did not heal. Id., p. 40. Four to five months after his back went out he was carrying out his recyclables when he heard a "series of cracks" and knew he "had a serious problem", but could not do anything about it because he had no insurance. Id.

On August 21, 2012, he sought emergency treatment at Buffalo General Hospital on August 21, 2012 for back pain. Id., p. 255. Diagnostic imaging in September 2012 revealed "multiple thoracic compression fractures inclusive of T6 though upper L1, of varying severity and age". Id., p. 323. At that time, he reported that his back pain was sharp, severe and constant, and that it was exacerbated by the activities of daily living. Id., p. 445. After undergoing kyphoplasty[3] on his T8 vertebrae on September 28, 2012. (id., p. 300), he continued to report that he had a severe "crushing sensation" in his back, which was affecting his activities of daily living, including ambulating and performing household functions. Id., p. 467. An October 2012 x-ray revealed "multiple compression fractures throughout the lumbar spine". Id., p. 712. In January 2013 he reported that while the pain "from the compression fracture is completely gone", he still had "pain above and below [the surgery site] but not intense pain, more chronic in

---

[3] Kyphoplasty is a procedure to treat spinal compression fractures. See Brozyna v. Niagara Gorge Jetboating, Ltd., 2011 WL 4553100, *2 n. 1 (W.D.N.Y. 2011).

nature". Id., p. 433. He was not taking any pain medications at that time. Id. However, he continued to complain that activities of daily living, including bending over, exacerbated his condition causing "sharp pain". Id., p. 529. A musculoskeletal assessment indicated that plaintiff had a normal range of motion, no tenderness, no swelling, and a normal gait. Id., p. 541. Similar assessments were made in March and June 2013. Id., pp. 581, 600. In March 2013 he reported that his back pain was "much improved" and was "[a]ble to mobilize better" (id., p. 579), and reported in June 2013 that he was able to walk more than 15 minutes without pain. Id., p. 598. However, in November 2013 he was seen in the emergency room for complaints of upper back pain resulting from a sneeze. Id., p. 714. An MRI revealed a "likely acute, but benign fracture" at T5. Id., p. 715. At that time, he was "neurologically intact with only mild-to-moderate complaints of pain". Id . At the hearing plaintiff testified that he was not on any pain medications. Id., p. 55.

In November 2012 plaintiff began treating for osteopenia (id., p. 408)[4] and was diagnosed with "severe osteoporosis" in December 2012. Id., p. 407. Plaintiff began receiving treatment at Roswell Park Cancer Institute in May 2013 for mastocytosis. Id., p. 847.[5] In June 2013 he was diagnosed with secondary osteoporosis due to his mastocytosis. Id., p. 902.

Plaintiff testified that in December 30, 2013 he fell and injured his right shoulder. Id., p. 44. In January 2014 underwent surgery for a displaced right humerus fracture. Id., p. 796. Plaintiff testified that he is unable to lift his right arm past his shoulder. Id., p. 44.

---

[4]  Osteopenia is reduced bone mass. See Miles v. Barnhart, 2008 WL 5191589, *3 n. 1 (N.D.N.Y. 2008).

[5]  Mastocytosis "is a rare genetic blood disorder that affects the autoimmune system and prevents the sufferer's white blood cells from attacking mast cells. Without treatment, the sufferer experiences severe allergic reactions to various substances and conditions, including light, dust and heat." Kocher v. Loyola University, 1997 WL 61455, *1 (E.D. La. 1997).

Plaintiff also testified that he has been suffering from depression since injuring his back. Id., p. 48. On November 29, 2011 he underwent a psychiatric evaluation by Krishniah Ramsetty, M.D. At that time, he was going through a divorce and described having a history of depression for which he had been taking Paxil until he lost his job and could no longer afford it. Id., p. 202. Dr. Ramsetty diagnosed him with depressive disorder NOS and with cannabis abuse and measured his global assessment of functioning ("GAF") as being 50. Id., p. 213.[6] He returned to Dr. Ramsetty on January 13, 2012. Id., 206. His GAF remained at 50 and his prescriptions for Trazodone and Paxil were "increased due to continued depression and psychomotor retardation". Id., pp. 206-07. On December 13, 2012, plaintiff underwent an outpatient behavioral health assessment (id., p. 413) and was diagnosed with "adjustment [disorder] anxiety and depressed mood", as well as cannabis dependence. Id., p. 416. His GAF remained at 50, and it was recommend that he needed a trauma therapist. Id. It appears that in November 2013 plaintiff began treating with Licensed Clinical Social Worker Seaghan Coleman of the Erie County Medical Center Behavioral Clinic. Id., p. 894.

Donna Miller, D.O. performed a consultative internal medicine examination on January 3, 2013. [7], pp. 420-23. Dr. Miller diagnosed plaintiff with chronic back pain, history of compression fractures, "status post kyphoplasty", "[r]emote history of Graves disease", "status post radioactive iodine", and hypothyroidism. Id., p. 423. She opined that plaintiff had a "moderate limitation for heavy lifting, bending, and carrying". Id.

---

[6] "The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning. The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. GAF is no longer used by Volume V of the [Diagnostic & Statistical Manual]". Rymer v. Colvin, 62 F. Supp. 3d 265, 268 n. 3 (W.D.N.Y. 2014) "[A] GAF score of 41–50 denotes serious symptoms or any serious impairment in social, occupational, or school functioning." Hill v. Astrue, 2012 WL 2178925, * 3 n. 3 (N.D.N.Y. 2012).

Plaintiff also had a consultative psychiatric examination performed by Susan Santarpia, Ph.D., who opined that plaintiff is "able to follow and understand simply directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits . Mild impairment is demonstrated in performing complex tasks independently. Difficulties are caused by fatigue". Id., p. 426. Martha Totin, Psy.D., a state agency review physician, opined that plaintiff was moderately limited in his abilities to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods", "respond appropriately to changes in the work setting", "set realistic goals or make plans independently of others". Id., p. 73. She found that plaintiff was not significantly limited in other respects. Id., pp. 72-73.

Based upon the medical evidence and testimony, ALJ Harrop determined that plaintiff's severe impairments included drug and alcohol abuse, degenerative disc disease, and diabetes mellitus. Id., p. 17. He excluded plaintiff's humeral fracture as a severe impairment since it did not meet the durational requirement for a severe impairment. Id. He concluded that plaintiff had the residual functional capacity ("RFC") to perform light work "except he was able to follow and understand simple directions/instructions; perform simple tasks independently; maintain attention/concentration; maintain a regular schedule; learn new tasks; make appropriate decisions; relate adequately with others and appropriately deal with stress within normal limits. However he had a mild impairment in performing complex tasks independently and had a limited ability to engage in heavy lifting, bending and carrying with the right shoulder/arm". Id., p. 19. In reaching that RFC, ALJ Harrop did not give any particular weight to the opinion of Dr.

Santarpia, but afforded "great weight" to Dr. Totin's opinion. Id., p. 23. As to plaintiff's physical limitations, ALJ Harrop gave "little weight" to Dr. Miller's opinion, since it was "vague and unclear as to the anticipated vocational limitations stemming from such 'moderate' limitations". Id., p. 21.[7]

Based upon that RFC, ALJ Harrop determined that plaintiff was able to perform his past relevant unskilled work as a courier/messenger, and therefore had not been disabled from his alleged onset date of October 2, 2011, through December 31, 2013, the date last insured. Id., p. 25.[8]

## ANALYSIS

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

For purposes of entitlement to disability insurance benefits, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[7]    Although not argued by plaintiff, it is not evident why ALJ Harrop did not recontact Dr. Miller to request additional information or clarification of plaintiff's specific functional abilities and limitations. *See* Robinson v. Colvin, 2016 WL 4542355, *6 (N.D.N.Y. 2016).

[8]    Contrary to ALJ Harrop, the Appeals Council used June 30, 2014 as the date last insured. [7], p. 2.

-6-

or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". 42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the following five-step inquiry must be employed:

> "1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform."

Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. *See* Talavera v. Astrue, 697 F.3d 145 (2d Cir. 2012); 20 C.F.R. §§404.1520, 416.920. Moreover, the ALJ has an

affirmative duty to fully develop the record where deficiencies exist. See Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting Commissioner of Social Security, 588 Fed. Appx. 82, 84 (2d Cir. 2015) (Summary Order).

**B.     Plaintiff's Arguments**

   **1.     Did ALJ Harrop Properly Evaluate the Opinion of the Licensed Clinical Social Worker?**

Plaintiff argues that ALJ Harrop failed to evaluate any of the limitations assessed by Mr. Coleman, a Licensed Clinical Social Worker. Plaintiff's Memorandum of Law [11-1], pp. 24-27. On June 11, 2014 Mr. Coleman completed a Mental Residual Functional Capacity Questionnaire indicating that he had treated plaintiff biweekly for the past year. [7], p. 929. He stated that plaintiff had made "limited progress due to chronicity of PTSD + medical + relational stressors". Id. Mr. Coleman was "unable to assess" the various mental ability and aptitudes set forth in the Questionnaire required for skilled and unskilled work. Id., pp. 931-32.

While the Acting Commissioner argues that this establishes that "Mr. Coleman did not provide a treating source opinion as to Plaintiff's functional limitations for the ALJ to assess" (Acting Commissioner's Memorandum of Law [18-1], p. 21), that argument ignores Mr. Coleman's narrative opinion that plaintiff "has strong difficulty maintaining a consistent thought process, limited ability to interact with others appropriately due to anxiety and feeling guilt/shame" (id., p. 933) and his finding that plaintiff was unable to engage in full-time competitive employment on a sustained basis. Id., p. 934.

"While the ALJ was free to conclude that the opinion of a licensed social worker was not entitled to any weight, the ALJ had to explain that decision." Canales v. Commissioner of Social Security, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010); Genovese v. Astrue, 2012 WL

-8-

4960355, *15 (E.D.N.Y. 2012); Maldonado v. Berryhill, 2017 WL 946329, *24 (S.D.N.Y. 2017). *See also* Bleil v. Colvin, 2017 WL 1214499, *7 (N.D.N.Y. 2017) ("[l]icensed clinical social workers are not considered acceptable medical sources and their opinions are not to be afforded controlling weight, but a report made by a social worker deserves particular weight where the social worker is the sole source that had a regular treatment relationship with plaintiff"). ALJ Harrod failed to do so here. Although he summarized portions of the Questionnaire, ALJ Harrod assessed no particular weight to Mr. Coleman's narrative opinion, which contradicts the RFC.

In arguing that any error was harmless, the Acting Commissioner notes that Mr. Coleman only saw plaintiff four times during the relevant period and that he completed the Questionnaire after the end of the relevant period, that plaintiff alleged no mental impairments in his application for DIB, and that Mr. Coleman's opinion that plaintiff was unable to maintain full-time competitive employment on a sustained basis was an administrative determination reserved to the Acting Commissioner. Acting Commissioner's Memorandum of Law [18-1], pp. 21-22. However, "[a] court may not speculate as to the reasoning of an ALJ and must not engage in a *post hoc* effort to supplement that reasoning". Otis v. Social Security Administration, Commissioner, 2013 WL 2422627, *12 (D. Vt. 2013); Hall v. Colvin, 2016 WL 6989806, *8 n.3 (N.D.N.Y. 2016). Therefore, I recommend that this case be remanded for Mr. Coleman's opinion to be properly weighed.

**2. Is ALJ Harrop's Physical RFC Finding Supported by Substantial Evidence?**

Plaintiff argues that by rejecting Dr. Miller's opinion - the only medical opinion of plaintiff's physical limitations - ALJ Harrop's RFC determination was a lay opinion not supported by substantial evidence. Plaintiff's Memorandum of Law [11-1], pp. 27-30.

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Commissioner of Social Security, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). Therefore, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection herself." Stein v. Colvin, 2016 WL 7334760, *3 (W.D.N.Y. 2016).

Nonetheless, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion. This is particularly true where the medical evidence shows relatively minor physical impairments, such that the ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Huyck v. Colvin, 2017 WL 2957867, *10 (W.D.N.Y. 2017). Courts have also "upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source". Staggers v. Colvin, 2015 WL 4751123, *3 (D. Conn. 2015). Those circumstances are not present here. As plaintiff notes, this case is "significant[ly] complicated". Plaintiff's Memorandum of Law [11-1], p. 29.

The record demonstrates that plaintiff suffered from mastocytosis, osteoporosis, and osteopenia that caused him to be extremely frail, as demonstrated by the numerous

compression fractures to his lumbar and thoracic spine he sustained, some allegedly the result of seemingly benign activities such as sneezing. ALJ Harrop's attempt to equate these impairments to functional limitations, without credited supporting medical opinions, was erroneous. Therefore, I recommend that the case also be remanded to correct this error.

### 3. Did ALJ Harrop Properly Evaluate Dr. Totin's Opinion?

Plaintiff argues that it was an error for ALJ Harrop to afford "great weight" to Dr. Totin's opinion, yet fail to include in the RFC the moderate limitations she assessed, which "raise question as to whether [he] could perform any job on a full-time competitive basis". Plaintiff's Memorandum of Law [11-1], pp. 21-23. In response, the Acting Commissioner argues that "an RFC for unskilled work is plainly not inconsistent with moderate limitations in mental functioning". Acting Commissioner's Brief [18-1], pp. 20-21.

"It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." Nix v. Astrue, 2009 WL 3429616, *6 (W.D.N.Y. 2009). Without qualification, ALJ Harrop afforded "great weight" to Dr. Totin's opinion that plaintiff had moderate limitation for completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Id., p. 73.[9] Yet, he adopted a contrary RFC, which specifically stated that plaintiff could maintain a regular schedule and maintain attention and concentration - without explanation or acknowledgement. This

---

[9] It is difficult to understand why ALJ Harrop believed that Dr. Miller's finding that plaintiff had a moderate limitation for heavy lifting, bending, and carrying was vague and unclear as to the vocational limitations resulting from such moderate limitations p. 21, but did not have a similar view of Dr. Totin's opinion, which also used "moderate" to quantify plaintiff's limitations.

constitutes legal error. *See* Dioguardi v. Commissioner of Social Security, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) ("[t]he ALJ committed legal error when she created, without explanation . . . . [t]he ALJ assigned the medical source statements . . . 'very great weight,' . . . but selectively adopted only the portions of each statement that were least supportive of plaintiff's application for benefits"); Royal v. Astrue, 2012 WL 5449610, *6 (N.D.N.Y.), adopted, 2012 WL 5438945 (N.D.N.Y. 2012) ("[i]In effect, [the] ALJ . . . 'cherry picked' the evidence, relying on some statements to support his conclusion, while ignoring other substantive detail to the contrary from the same sources. This, however, does not satisfy a substantial evidence standard. While ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence that supports a particular conclusion").

Although the Acting Commissioner points to contrary authority,[10] under the facts and circumstances of this case, the failure to incorporate moderate psychological limitations found by Dr. Totin into the RFC warrants remand. *See* Karabinas v. Colvin, 16 F. Supp. 3d 206, 215 (W.D.N.Y. 2014) (error for the ALJ to not incorporate moderate difficulties in maintaining concentration, persistence, or pace into an RFC assessment); Wood v. Commissioner of Social Security, 2009 WL 1362971, *5 (N.D.N.Y. 2009) ("[t]he ALJ's RFC assessment failed to incorporate the limitations . . . (moderate limitations on the abilities to complete a normal workday and workweek without interruptions, respond appropriately to changes in the work setting, and set a realistic goals and make plans independently of others). Nor did the ALJ explicitly reject those doctors' opinions. Therefore, remand is appropriate"); Gallup v. Commissioner of Social Security, 2014 WL 2480175, *8 (N.D.N.Y. 2014). *See also* Sink v.

---

[10] *See* Crawford v. Astrue, 2014 WL 4829544 *23 (W.D.N.Y. 2014) (the ALJ's limitation of jobs that required the plaintiff to "understand, remember, and carry out simple instructions" accounted for the plaintiff's moderate limitations).

Colvin, 2015 WL 3604655, *20 (W.D.N.Y. 2015) ("an RFC, to 'simple' instructions has not been found to sufficiently address various mental impairments").

Of particular note, Dr. Totin assessed plaintiff with a moderate limitation in his ability to maintain a regular schedule. "The mental abilities needed for any job include 'the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." [The Social Security Program Operations Manual System] § DI 25020.010 . . . . 'These requirements are usually strict.' Id. Because this ability is a general requirement for all jobs, the ALJ must address this limitation in formulating [the plaintiff's] RFC." Jones v. Berryhill, 2017 WL 3052748, *7 (D.N.M. 2017). The Acting Commissioner's reliance on Petrie v. Astrue, 412 Fed.Appx. 401 (2d Cir. 2011) (Summary Order) and Zabala v. Astrue, 595 F.3d 402 (2d Cir. 2010) - neither of which specifically address a moderate limitation for maintaining a regular schedule without unreasonable breaks - does not compel a different conclusion.

Demonstrating the significance of a limitation in plaintiff's ability to maintain a regular schedule without unreasonable breaks, the vocational expert testified that "[t]he need for [repeated unscheduled 30 minute] breaks would take him off task and degrade his productivity to unacceptable levels". [7], pp. 60-61. Therefore, I recommend that on remand the Acing Commissioner also reassess plaintiff's RFC and, if necessary, obtain testimony from a vocational expert based upon that RFC.

**CONCLUSION**

For these reasons, I recommend that that plaintiff's motion for judgment on the pleadings [11] be granted to the extent that this case be remanded to the Acting Commissioner for further proceedings consistent with this Report and Recommendation, and that the Acting

Commissioner's motion for judgment on the pleadings [18] be denied. Unless otherwise ordered by District Judge Michael A. Telesca, any objections to this Report and Recommendation must be filed with the clerk of this court by November 21, 2017. Any requests for extension of this deadline must be made to Judge Telesca. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 7, 2017

      /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge